**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PENNY ROCK,**

                            **Plaintiff,**

    vs.                                          **8:14-CV-1421**
                                                     **(MAD/CFH)**

**MICHAEL BLAINE, THOMAS LAVALLEY,**
**DANIEL HOLDRIGE, THE STATE OF NEW**
**YORK, and THE NEW YORK STATE**
**DEPARTMENT OF CORRECTIONS AND**
**COMMUNITY SUPERVISION,**

                            **Defendants.**
_____

**APPEARANCES:**                            **OF COUNSEL:**

**ELMER ROBERT KEACH, III, P.C.**      **ELMER ROBERT KEACH, III, ESQ.**
One Pine West Plaza, Suite 109           **MARIA K. DYSON, ESQ.**
Albany, New York 12205
Attorneys for Plaintiff

**NEW YORK STATE ATTORNEY**        **CATHY Y. SHEEHAN, ESQ.**
**GENERAL - ALBANY**
The Capitol
Albany, New York 12224
Attorneys for Defendants
State of New York and New York State
Department of Corrections and Community
Supervision

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On November 11, 2015, Plaintiff Penny Rock commenced this action against Defendants State of New York and three individuals (Blaine, LaValley, and Holdrige) pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5 *et seq.*, and 42 U.S.C. § 1983, alleging retaliatory conduct for making a formal complaint of gender discrimination. *See* Dkt.

No. 1. In response to Defendants' motion to dismiss the original complaint, Plaintiff filed an amended complaint, naming the New York State Department of Corrections and Community Supervision ("DOCCS") as an additional defendant. *See* Dkt. No. 6.

Presently before the Court is Defendant State of New York's motion to dismiss the claims against it, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 8-1.

## II. BACKGROUND

### A.    Plaintiff's Amended Complaint

#### *1. Factual Allegations Pleaded*

In February 2013, Plaintiff was involved in an incident with another corrections officer who "flew into a rage" and threatened Plaintiff. *See* Dkt. No. 6 at ¶ 11. Plaintiff submitted a written, informal complaint to her captain, Defendant Holdrige, who then invited Plaintiff to his office to discuss the incident. *See id.* at ¶ 12. During this discussion — but following resolution of the issue between Plaintiff and the involved corrections officer — Defendant Holdrige asked Defendant Blaine, Plaintiff's supervisor, whether he had anything to add to the discussion. *See id.* Defendant Blaine, who had "a known and documented history of . . . disdain for women who work in correctional facilities," refused to discuss the incident while Plaintiff was present and "slammed [the] door."[1] *See id.* Plaintiff then expressed to Defendant Holdrige her belief that Defendant Blaine would "come after" her because of the incident. *See id.*

Plaintiff consequently suffered harassment at work "almost every day" for the next year. *See id*. at ¶ 13. Defendant Blaine would "come into her work area, often at night when [Plaintiff] was alone, and stare at her[,]" and "laugh and smirk at her" when she walked by. *Id.* After

---

[1] Plaintiff's amended complaint implies but does not state that Blaine slammed the door on his way out of the office. *See* Dkt. No. 6 at ¶ 12 (describing Plaintiff's subsequent statement as "in response" to the slamming of the door).

2

Plaintiff's coworker stated to Defendant Blaine that Plaintiff had no intention of "bid[ding] out of her job in [Blaine's] location[,]" he remarked that he would "continue to apply pressure on [Plaintiff]" to request a work assignment at a different location. *Id.* During this time, Plaintiff informally complained to her superiors — including Defendant Holdrige and Assemblywoman Janet Duprey[2] — but Defendant Blaine's conduct was not remedied. *See id.*

On July 22, 2013, Plaintiff filed a formal complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that Defendant Blaine was discriminating against her based on her sex. *See id.* at ¶ 15. Plaintiff's complaint also detailed the alleged discrimination of five other women — most of whom had requested reassignment to a different location after being sexually harassed by Defendant Blaine. *Id.* The EEOC's findings were ultimately inconclusive, and Plaintiff was issued a Right to Sue letter. *See* Dkt. No. 6, Exhibit A.

Defendant Blaine thereafter began to stalk Plaintiff outside of the workplace; and in one instance on October 15, 2013, he pushed a shopping cart in front of Plaintiff's cart and made vulgar statements at her when she greeted him. *See id.* at ¶ 18. Immediately following this incident, Plaintiff made a statement to the New York State Police detailing Defendant Blaine's harassment at work and noting that he was "now following her outside the facility." *See id.* Plaintiff provided a copy of the police report to Defendant Holdrige and informed him that the "escalating harassment was causing her to fear for her physical safety and was also causing her severe stress for which she was seeking medical help." *Id*. The following day, October 31, 2013, Plaintiff received a workplace evaluation from her supervisor with a negative comment regarding her ability to "get along with others," which her supervisor stated he had to include otherwise "he

---

[2] Duprey, of Assembly District 115, informed Plaintiff that she had spoken with supervisors at Plaintiff's place-of-work who promised to address the situation. *See* Dkt. No. 6 at ¶ 14.

would get in trouble."³  *Id.*  Plaintiff again complained to her superiors, but no corrective action was taken.  *See id.*

On November 4, 2013, Plaintiff met with the director of EAP and complained of severe chest pains.  *See id.* at ¶ 21.  The director instructed Plaintiff to seek immediate medical attention because she "appeared to be in such a state of distress[.]"  *See id.*

In early December 2013, Plaintiff contacted Governor Cuomo by email "and was assured that her concerns would be forwarded to the appropriate supervisory officials."  *Id.* at ¶ 22.  On December 7, 2013, Plaintiff wrote to the Acting Commissioner of DOCCS who then contacted the Office of Diversity Management on Plaintiff's behalf.  *See id.*  On January 1, 2014, Defendant Holdrige warned Plaintiff to "be careful" because Defendant Blaine was soon to receive a "Notice of Discipline" towards the middle of the month.  *Id.* at ¶ 23.

Defendant Holdrige indeed gave Defendant Blaine two Notices of Discipline, one of which was for insubordination regarding his conduct towards Plaintiff.  *See id.* at ¶ 24.  Based upon these notices, the superintendent of the correctional facility, Defendant LaValley, received a recommendation from the relevant DOCCS office that Defendant Blaine should be suspended for a year without pay.  *See id.*  Defendant LaValley instead rejected the recommendation and offered Defendant Blaine forty-five days of suspension or the option to retire without penalty.  *See id.*  Defendant Blaine chose to retire, but was not required to do so for "several months," during which time he was still permitted contact with Plaintiff and continued his retaliatory conduct.  *See id.*  Defendant LaValley was "forced to retire shortly thereafter . . . because of his failure to address [Plaintiff]'s situation."

---

³ Plaintiff's amended complaint alleges that her supervisor reported directly to Defendant Blaine who instructed him to write the negative comment in Plaintiff's evaluation.  *See* Dkt. No. 6 at ¶ 20.

4

The Office of Diversity Management determined Plaintiff's allegations were substantiated, and upon further harassment, Plaintiff "reached out to her union president who, in turn, contacted the Superintendent Deputy[,] Stephen Brown." *Id.* at ¶ 27. Shortly afer retiring, Defendant Blaine filed an internal complaint[4] against Plaintiff and Defendant Holdrige claiming they were trying to destroy his career. *See id.* at ¶ 28.

### 2. *Causes of Action Asserted*

Plaintiff's amended complaint seeks compensatory damages from all Defendants; punitive damages from Defendant Blaine; and statutory damages pursuant to Title VII and the New York State Human Rights Law from Defendants State of New York and DOCCS. *See* Dkt. No. 6 at ¶¶ 37-51. Specifically, Plaintiff asserts four causes of action in her amended complaint, two of which are asserted against the State and are currently before the Court in light of Defendants' motion. First, in violation of Plaintiff's rights under Title VII of the Civil Rights Act of 1964, Defendants State of New York and DOCCS retaliated against Plaintiff for filing formal complaints of gender discrimination with the EEOC and harassment with the New York State Police. *See* Dkt. No. 6 at ¶¶ 32-36. Plaintiff claims that these Defendants failed to take corrective action with malice and reckless indifference towards Plaintiff. *See* Dkt. No. 6 at ¶¶ 32-36. Second, in violation of Plaintiff's rights under New York State Human Rights Law, Defendants State of New York, DOCCS, and Michael Blaine discriminated against Plaintiff on the basis of sex and retaliated against Plaintiff as claimed in the aforementioned second cause of action. *See* Dkt. No. 6 at ¶¶ 32-51; N.Y. Exec. Law § 296(1)(e), (7) (2015).

**B.     Defendant State of New York's Motion to Dismiss**

On February 20, 2015, Defendant State of New York filed a motion to dismiss, pursuant

---

[4] This internal complaint is currently pending. *See* Dkt. No. 6 at ¶ 28.

to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending solely that because the State is not the bona fide employer of any individual employed by a state agency, it is therefore an improper defendant in a Title VII action brought by a plaintiff employed by a state agency. *See* Dkt. No. 8-1 at 5[5] (citing *La Martina v. Fischer*, No. 12-CV-308A, 2013 WL 1682603, *4-*5 (W.D.N.Y. Mar. 19, 2013)). The State argues that because Plaintiff was employed by DOCCS, which is a state agency, the State is not a proper defendant in this action. Dkt. No. 8-1 at 5 (citing Dkt. No. 6 at ¶ 10); *see also Wilson v. Reuben H. Donnelley Corp.*, No. 98 Civ. 1750 (AGS), 1998 WL 770555 at *8 (citing *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995)) ("[O]nly employers, not individual defendants, are subject to suit under Title VII."). Furthermore, in accordance with this motion to dismiss, the State also asks that this Court relinquish supplemental jurisdiction over the related state-law claims joined in this action. *See* Dkt. No. 8-1.

**C.     Plaintiff's Opposition to Defendant's Motion**

Plaintiff contends that the State is, along with DOCCS, her co-employer because, in addition to the factual allegations set forth above, the State is responsible for paying her salary, supervising her employment benefits and civil-service status, and the collective-bargaining agreement signed by Plaintiff's union is between the union and the State. *See* Dkt. No. 20-1 at 6 (citing Dkt. No. 6 at ¶¶ 8-9). Plaintiff maintains that since her amended complaint explicitly alleges that Defendants State of New York and DOCCS are jointly her co-employers, a determination regarding the appropriate bearer of liability is sufficiently in dispute to warrant discovery and the denial of the State's motion. *See id.* at 4. Plaintiff also argues that Defendant misstates the conclusions of the authority cited in its memorandum.

### III. DISCUSSION

---

[5] To avoid confusion, whenever the Court references a specific page number for an entry on the docket, it will cite to the page number assigned by the Court's electronic filing system.

**A. Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of the non-movant's claim for relief, without regard to the merits of the claim. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007); *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). When determining the legal sufficiency of a claim, a court must accept as true all well-pleaded allegations contained within the complaint as construed most favorably to the claimant. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth does not extend to "mere conclusory" legal statements. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

To withstand a Rule 12(b)(6) motion to dismiss, a pleading must contain "a short and plain statement of the claim," with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). "Factual allegations [contained in the pleading] must be enough to raise a right of relief above the speculative level." *Id.* at 555. But this standard does not call for a determination of probability and may indeed be satisfied even if "actual proof of those facts" alleged is improbable. *Id.* at 570. "A claim has *facial plausibility* when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed[,]" *id.* at 570.

**B. Plaintiff's Retaliation Claim Under Title VII**

*1. Sufficiency of Plaintiff's Amended Complaint*

7

To establish a prima facie case for retaliation under Title VII, an employee-plaintiff must first demonstrate (1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *See Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir 2003) (citing *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998)). Once a plaintiff meets this burden, the defendant then has the burden of production to "articulate a legitimate nondiscriminatory reason for its actions." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995) (citation omitted).

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [his or her] compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or natural origin." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63 (1986) (citing 42 U.S.C. § 2000e-3(a)). Title VII does not limit employers' liability to only "economic" or "tangible" damages resulting from such discrimination, but also allows for psychological damages. *Id.* at 64. Title VII further makes it unlawful for an employer to discriminate against an employee "because [he or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing . . . ." *Terry*, 336 F.3d at 140.

Furthermore, violation of Title VII occurs when "a retaliatory motive plays a part in adverse employment action toward an employee, whether or not it was the sole cause." *Id.* at 140-41 (quoting *Cosgrove v. Sears, Roebuck &Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993)). "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor*, 447 U.S. at 66. "Without question, when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminates on the basis of sex." *Id.* at 64 (internal quotation marks omitted).

8

There is no question in this case that the first prong of the analysis has been satisfied. Plaintiff engaged in protected activity by filing complaints with DOCCS supervisors, the EEOC, State Police, and other officials as detailed above, and all Defendants were aware of this activity. *See Tomka,* 66 F.3d at 1308 (holding that "complaints to company management about sexual harassment constitute protected activity") (citation omitted). Under the standard of pleading required by *Twombly* and *Iqbal*, Plaintiff has sufficiently pleaded allegations of discriminatory conduct by her supervisor, Defendant Blaine, that, if proven, could allow the Court to determine that adverse action was taken against Plaintiff in retaliation for filing the complaints. In satisfaction of the second and third prongs of the analysis are Plaintiff's allegations that Defendant Blaine induced Plaintiff's immediate superior to include a negative comment on Plaintiff's evaluation and attempted to change Plaintiff's job description to include more duties. *See* Dkt. No. 6 at ¶ 13. The State does not contest the legal sufficiency of Plaintiff's claims against its co-Defendants but rather only argues that it should not be held vicariously liable because it is not Plaintiff's employer. *See* Dkt. No. 8-1 at 5.

### *2. Whether Liability is Imputed to the State of New York*

Plaintiff is correct that no court in this jurisdiction has explicitly held that the State is per se an improper defendant in Title VII actions. *See, e.g.*, *Palmer v. New York State Office of Court*, 526 Fed. Appx. 97, 100 (2d Cir. 2013) (dismissing claim because the plaintiff did not actually allege discrimination on the basis of "race, color, religion, sex, or national origin"); *La Martina*, 2013 WL 1682603 at *3 (noting determinations of employer–employee relationships involve an intensive agency analysis).

When the alleged discriminatory conduct is effectuated by an employee's supervisor, liability will generally be imputed to the employer. *See Richardson v. New York State Dep't of Corr. Serv.*, 180 F.3d 426, 441 (2d Cir. 1999); *but see Meritor*, 477 U.S. at 73-74 (concluding that

employers are not *automatically* liable for their supervisors' sexual harassment, and a court must look to agency principles in light of particular circumstances). An employer will, however, *always* be vicariously liable when its negligence perpetuates a hostile work environment, and accordingly, "[e]vidence that an employer did not monitor the workplace, failed to respond to complaints, failed to provide a system for registering complaints, or effectively discouraged complaints from being filed would be relevant." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2453 (2013). When an employer has effectively delegated the power to take "tangible employment actions against employees to "a few individuals," it will not succeed in isolating itself from liability. *See id.* at 2452; *see also* Equal Emp't Opportunity Comm'n Compliance Manual § 2-III(B)(1)(a)(iii)(a) (outlining factors to be considered in determining whether separate entities are an integrated enterprise).

Plaintiff has alleged in her amended complaint that both the State of New York and DOCCS retaliated against her by failing to take corrective action in response to her complaints; in effect condoning the discrimination against her by her supervisor for which liability may be imputed to her employer. Defendant Blaine's supervisory status is not contested by the State. Furthermore, Plaintiff alleges that both entities bear responsibility as her joint employers because various supervisory responsibilities and policy decisions regarding Plaintiff's employment are divided between DOCCS as an agency, and the State of New York directly. *See* Dkt. No. 6 at ¶¶ 8-9. Plaintiff finally contends that these failures were effectuated recklessly by both DOCCS and the State. In light of these allegations and the fact intensive inquiry necessary to determine the extent of the State's involvement in relevant DOCCS' activities and policies, the Court finds that factual discovery is appropriate under *Vance* prior to any conclusive finding of liability.

Accepted as true and construed in Plaintiff's favor, these facts indeed allow the Court to draw the reasonable inference that the State is Plaintiff's employer and is therefore potentially

liable under Title VII. Since the State's argument for dismissal of Plaintiff's claims under section 296 of the New York Human Rights Law involves the same factual inquiry into its employer-status, the Court need not separately address the matter.

For the foregoing reasons, the Court denies Defendant's motion to dismiss.

**C.     Plaintiff's Claim Under New York State Human Rights Law**

In accordance with this denial of the State's motion, the Court will continue to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over Plaintiff's claims arising under section 296 of the New York State Human Rights Law.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant State of New York's motion to dismiss is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: June 17, 2015
        Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge